ORIGINAL

1    STOECKLEIN LAW GROUP, A PROFESSIONAL CORPORATION
     DONALD STOECKLEIN, ESQ., SBN 075091
2    402 West Broadway, Suite 400
     San Diego, CA 92101
3    Telephone: (619) 595-4882

4    Attorney for Plaintiffs

5    LAW OFFICES OF MICHAEL E. KULWIN
     Michael E. Kulwin, Esq. SBN #285
6    601 S. 7TH Street 2nd Floor
     Las Vegas, NV 89101
7    Telephone: (702) 387-5533

8    Liaison Counsel

9

                    **UNITED STATES DISTRICT COURT**
10
                         **DISTRICT OF NEVADA**
11

12   CAROL GAMBLE TRUST 86, JUNE L.
     BLACKWELL, JUNE L. BLACKWELL and              CV-S-02-0145-DWH-LRL
13   CHRISTOPHER FORD, as joint tenants,
     TERRY SHORES, STEVE RIGG, KARL
14   WEINACKER, RESSOYIA ANDERSON,
     MEL GOODMAN, SLAWOMIR KOWNACKI,
15   and JOHN BUSSJEAGER on behalf of themselves
     and All Others Similarly Situated,
16
                    Plaintiffs,
17
     vs.
18
     E-REX, INC., f/k/a P.R. STOCKS, A Nevada
19   Corporation, CARL E. DILLEY, individually;
     DONALD A. MITCHELL, individually;
20   JOSEPH PACHECO, individually, JEFFREY M.        **CLASS ACTION**
     HARVEY, individually; BRIAN A. LeBRECHT
21   individually, THE LeBRECHT GROUP,
     A Purported California Professional Corporation,
22   DIVEDEPOT.COM, INC., a purported business
     entity, INTERNATIONAL INVESTMENT
23   BANKING, INC., a Purported Florida
     Corporation,
24                  Defendants.

25   **_CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAW,_**
     **_CORPORATE MISMANAGEMENT, BREACH OF FIDUCIARY DUTY AND REQUEST_**
26   **_FOR APPOINTMENT OF RECEIVER OR CUSTODIAN_**

27

28                                    1

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 as it is a civil action arising under the constitution, laws, or treaties of the United States. Specifically, this action involves violations of the Securities Exchange Act of 1934, codified as 15 U.S.C. Sec.78(a) et seq., (as amended).  This Court also has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 29 U.S.C. Sec. 1367(a), as said claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.  Venue is proper within this unofficial Southern Division of this District pursuant to 28 U.S.C. Sec. 1391(b)(l) as a substantial part of the events or omissions giving rise to the claim occurred herein.  Alternatively, venue is proper pursuant to 28 U.S.C. Sec. 1391(b), (3), as the District of Nevada is the district in which one of the defendants may be found.

3.  Defendant E-Rex, Inc., ("E-Rex") is an entity created pursuant to the laws of the State of Nevada.

4.  Defendant E-Rex caused the transfer of its securities and shares of common stock through its transfer agent, Nevada Agency and Trust Company, situate in the State of Nevada.

### INTERESTED PERSONS AND ENTITIES

5.  E-Rex, Inc., a Nevada Corporation, was first incorporated on August 26, 1986, as P.R. Stocks, Inc.  On February 26, 1992, the corporation changed its name to National Health & Safety Corporation.  On November 12, 1992, the corporation changed its name to Med-Gain International Corporation.  On June 20, 1994, the corporation changed its name to E-Rex, Inc.  At all times relevant herein, said corporation was an entity authorized to and doing business pursuant to the laws of

2

the State of Nevada. Plaintiffs are further informed and believe, that at all times relevant herein, the By-laws of said corporation, remain unchanged from those issued, and approved by P.R. Stocks, Inc.

6.    Plaintiffs are informed and believe and thereon allege,  that at all times relevant, International Investment Banking, Inc., ("IIBI"), is a purported Florida corporation, with Donald A. Mitchell serving as its Chairman and President. IIBI entered into an agreement with E-Rex to provide consulting services and acted in the capacity of a broker/dealer of stock and/or securities and/or equity instruments as hereinafter alleged.

7.    Plaintiffs are informed and believe and thereon allege, that at all times relevant, Carl E. Dilley ("Dilley"), an individual, is and has been Chief Executive Officer, President and a Director of E-Rex from and after April 1, 2000.

8.    Plaintiffs are informed and believe and thereon allege, that at all times relevant, Donald A. Mitchell ("Mitchell"), an individual, is and has been a Director  and Chairman of the Board of Directors of E-Rex since March 15, 2001.

9.    Plaintiffs are informed and believe and thereon allege, that at all times relevant, from and after June 1999 Defendant Mitchell is and was President and Chairman of the Board, of that entity known as "International Investment Banking, Inc., ("IIBI"), which entered into a series of agreements with Defendant E-Rex, whereby IIBI and/or Mitchell, while acting as President and Chairman of said IIBI,  as well as Director and Chairman of the Board of Directors of E-Rex, did agree independently and on behalf of  and in conjunction with E-Rex, one with the other, solicit the Plaintiff Class herein, whereby the Plaintiff Class would purchase equity interest(s)  in Defendant E-Rex in the form of stock subscriptions or however same may be termed, or alternatively, solicited debt instruments in the form of promissory notes issued by IIBI for the benefit of E-Rex, whereby all monies received pursuant to said

3

transactions, would be tendered to E-Rex for specific business purposes as represented by E-Rex and/or IIBI.

10.     Plaintiffs are  informed and believe and thereon allege, that at all times relevant, Joseph Pacheco ("Pacheco"), an individual, is and/or has been a Director of E-Rex, Inc., a Nevada Corporation.

11.     Plaintiffs are informed and believe and thereon allege, that at all times relevant, Jeffrey M. Harvey ("Harvey"), an individual, is and has been a Director and Treasurer of E-Rex, Inc., a Nevada Corporation.

12.     Plaintiffs are informed and believe and thereon allege, that at all times relevant, Brian A. LeBrecht, ("LeBrecht"), an individual, is and has been legal counsel to E-Rex, Inc., a Nevada Corporation

13.     Plaintiffs are informed and believe and thereon allege, that at all times relevant, The LeBrecht Group, a Professional Corporation, is and has been legal counsel to E-Rex, Inc., a Nevada Corporation.

14.     Plaintiffs are informed and believe and thereon allege, that at all times relevant, DiveDepot.com, Inc., ("DDC") is a purported corporation pursuant to the laws of the State of New York and/or the State of Florida.  Defendant Carl Dilley, at all times relevant, acted and served as President and/or Chief Executive Officer of said DDC. Plaintiffs are informed and believe that said corporate defendant and/or Defendant Dilley, individually,  received cash from Defendant E-Rex in the approximate sum of $150,000.00 at a time when Defendant E-Rex and its officers and directors, knew Defendant E-Rex to be substantially undercapitalized.

15.     The defendants, directly or indirectly, have made use of the means or instruments of transportation  or  communication  in  interstate  commerce,  the  means  or instrumentalities of interstate commerce, facilities consisting of national securities exchange (i.e., the National Association of Securities Brokers Over the Counter

4

Bulletin Board Quotation System), or the mails, in connection with the transactions, acts, practices, conduct and courses of business described hereinafter.

16.    Plaintiff, the Carol Gamble Trust 86, purchased through its authorized and empowered Trustee, One Million Five Hundred Thousand (1,500,000.00) shares of E-Rex common stock on February 17, 2000, at the price of Ten Cents ($.10) per share, Fifty Thousand (50,000) shares of E-Rex common stock in August 2000 at Fifty Eight Cents ($.58) per share and Three Hundred Sixty Thousand (360,000) shares were further acquired in February 2001, pursuant to a solicitation issued by E-Rex and/or IIBI on or about said dates.

17.    Plaintiff June L. Blackwell purchased Fifty Eight Thousand Four Hundred Ninety (58,490) shares in or around November 1999 through January 2002 at an average cost of $.75 per share and purchased Ninety Thousand (90,000) shares in February 2000 at $.10 per share, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said dates.

18.    Plaintiffs June L. Blackwell and Christopher Ford, as joint tenants, purchased Ten Thousand (10,000) shares in or around February 2000 at Ten Cents ($.10) per share, thereafter purchased One Hundred Sixty Five Thousand (165,600) shares in or around July 2000 through January 2002 at $.65 per share and acquired Thirty Thousand (30,000) shares in or around February 2001, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said dates.

19.    Plaintiff Terry Shores purchased Five Hundred Thousand (500,000) shares of E-Rex common stock in February 2000 at the price of Ten Cents ($.10) per share; purchased Two Hundred Fifty Thousand (250,000) shares of E-Rex common stock from the period March through December 2000 at the price of Fifty Cents ($.50) per share; purchased Fifty Thousand (50,000) shares of E-Rex common stock in September 2000 at the price of Sixty Six Cents ($.66) per share; acquired One Hundred Sixty

Six Thousand Six Hundred Sixty Seven (166,667) shares in February 2001; and and entered into a trade of Nine Hundred Twenty-Eight Thousand Five Hundred Seventy (928,570) shares of E-Rex common stock in September 2001 at the price of Eight Cents ($.08) per share  pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said date.

20.     Plaintiff Steve Rigg  purchased One Hundred Twenty Five Thousand (125,000) shares of E-Rex common stock in May 2000, at an average cost of Ninety Five Cents ($.95)  per share, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said date.

21.     Plaintiff Karl Weinacker purchased Three Hundred Fifty Thousand (350,000) shares of E-Rex common stock between April 1999 and August 2001, at an average cost of Seventy Five Cents ($.75) per share, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said date.

22.     Plaintiff Ressonyia Anderson   purchased One Hundred Eighty Two Thousand (182,000)  shares of E-Rex common stock in or about April 2000 at an average cost of Thirty Cents ($.30) per share, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said date.

23.     Plaintiff Mel Goodman  purchased Four Hundred Seventy Thousand (470,000) shares of E-Rex common stock between November 1999 and December 2001 at an average cost of Seventy Eight Cents ($.78)  per share, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said date.

24.     Plaintiff Slawomir Kownacki purchased Two Hundred Thousand (200,000)  shares of E-Rex common stock in or around August 2001, at an average cost of Fourteen Cents ($.14) per share, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said date.

25.     Plaintiff John Bussjeager  purchased Thirty Four Thousand Nine Hundred (34,900)

6

shares of E-Rex common stock on May 25, 2000, at the price of Twenty Six Cents ($.26) per share, and purchased Three Hundred Seventy Five Thousand (375,000) shares in or around June 2001 at an average cost of Thirty Five Cents ($.35) per share, pursuant to a solicitation issued by E-Rex and/or IIBI, on or about said date.

### CLASS ACTION ALLEGATIONS

26.  Plaintiffs bring this case on a Class Action pursuant to Rule 22(a), (b), (3) of the Federal Rules of Civil Procedure on behalf of the Class constituting all persons and entities who purchased E-Rex common stock from April 1999 through December, 2001, inclusive. Excluded from the Class are the Defendants herein, any subsidiaries or affiliates of E-Rex, the officers and directors of E-Rex and/or IBII and any subsidiaries or affiliates of same, during the class period and each of their heirs, successors and assigns. Further excluded from said Class are any persons, parties or entities who received securities of E-Rex in violation of Regulation S and/or Form S- 8, and further excluded are any persons, parties or entities who received securities of E-Rex for "services" purportedly rendered to E-Rex which said securities have been issued within the past twenty-four (24) months.

27.  The members of the Class are so numerous that joining of all members of impractical. E-Rex has nearly fifty-two million shares outstanding. During the Class Period, hundreds of thousands of shares of E-Rex stock were purchased by persons located throughout the United States. The exact number of Class Members can be determined by appropriate discovery.

28.  Plaintiffs claims as set forth are claims of members of the Class. Plaintiffs and all members of the Class sustained damages as a result of Defendant's wrongful conduct complained of herein.

29.  Plaintiffs will fairly and accurately protect the interests of the members of the Class and have retained counsel competent and experienced in Class and Securities

7

litigation. Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

30. A Class Action is superior to other available methods for a fair and efficient adjudication of this controversy. Because the damages suffered by many individual Class Members may be relatively small, the expense and burden of individual litigation may virtually impossible for the Class Members to individually seek redress for the wrongful conduct alleged herein.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law in fact common to the Class are:

(i) Whether the Federal Securities Law were violated by Defendants' acts as alleged herein.

(ii) Whether statements disseminated to the investing public and securities markets by the Defendants misrepresented material facts about E-Rex, its business and conduct of its business affairs;

(iii) Whether Defendants acted willfully and/or recklessly in misrepresenting and/or omitting to state material facts about E-Rex, its securities, its business and conduct of its business affairs.

(iv) Whether the market price of E-Rex's common stock during the Class Period was artificially manipulated and depressed due to the misrepresentation and/or business practices complained of herein.

(v) Whether the members of the Class have sustained damages, and, if so, what the proper measure is thereof.

32. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud on the market doctrine in that:

(a) Defendants made public misrepresentations and/or omitted material facts

during the Class Period as alleged herein;

    (b)    Whether the misrepresentations and/or business practices arising from or in conjunction with said representations were material;

    (c)    Whether the misrepresentations and/or omissions as alleged tended to induce reasonable investors to misjudge the value of E-Rex shares, and its business practices

33.    Based upon the foregoing, Plaintiffs and members of the Class are entitled to a presumption of reliance upon the integrity of the market for the purposes of class certification, as well as for ultimate proof of the claims on their merits. Certainly, Plaintiffs and members of the Class are entitled to presumption of reliance with respect to the omissions and/or actions alleged herein.

34.    Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

## ***SUBSTANTIVE ALLEGATIONS***

35.    E-Rex is a Nevada Corporation whose primary business activity is the completion, license, production and sale of a proprietary electronic device (the "Product") which consists of a 6 in 1 portable printer-fax and scanner with wireless internet connectivity, the viability of which such product is believed substantiated by Valcom, Inc., which has tested and verified testing of the product for approximately 24 months. The company's product is or was to have been available for license and manufacture by December 2000 per the representations of E-Rex, its officers, directors, attorneys and/or IBII.

36.    At all times relevant herein, E-Rex had sufficient liquid assets to pay monetary sums due Valcom, Inc., and other just creditors but have failed and refused to do so, instead utilizing money raised from public stock offerings and/or debt offerings in contravention of the best interests of the corporation, it shareholders and debt holders

in one or more of the following particulars:

(a)  By compensating and/or acquiring purported business entities of its insider/officer Dilley without good cause;

(b)  By entering into agreements and/or compensating its insider/director Mitchell and/or IIBI without good cause.

(c)  By failing to pay just debt obligations of the corporation.

37.  That all times relevant, Defendant E-Rex made misrepresentations that were material to the purchase and/or sale of its securities for purposes of finalizing the product cycle in one or more of the following particulars:

(a)  That there was "founder stock" available for purchase by members of the Class;

(b)  That the securities sold to the Plaintiff Class would be "free trading" on or about March 29, 2000;

(c)  That the securities sold would be directly utilized for purposes of finalizing the Product.

38.  That in truth and fact the Defendant made omissions that were material to the purchase and sale of said securities, on a repetitive basis, knowing in fact that;

(a)  There was no valid, operative opinion from securities' counsel affirming the trading status of the shares offered for sale;

(b)  That E-Rex had committed to issuing more than Eight Million Shares of its common stock for "services" thereby depressing the value of and diluting Plaintiffs' equity interest in E-Rex.

(c)  That the purpose of the solicitation to acquire funds was not to be utilized for the Defendants' development of its Product but in fact to acquire funds necessary to purchase insider's stock shares;

39.  Alternatively, the purpose of the sale was to acquire funds necessary to purchase an

alleged business entity of E-Rex's President Carl Dilley, known as Divedepot.com which purchase utilized approximately one-half of all net cash received by E-Rex arising from the sale of its securities to the representative Plaintiffs.

40. Plaintiff is informed and believes that after procuring monies of the Plaintiff Class arising from the purchase of its securities, E-Rex did intentionally and willfully, through material omissions or otherwise, depress the value of Plaintiffs' Securities and/or dilute the value of Plaintiffs' Securities by:

(a) issuing "Regulation S" securities to insiders of the Defendant corporation without awaiting the necessary twelve (12) month period as required by 15 U.S.C., Section 78(a);

(b) by issuing "S-8" stock to persons and/or parties (including insiders) for unnecessary services which services the Plaintiff Class is informed and believes were in fact not rendered to E-Rex.

(c) by issuing debt instruments through its agents and/or representatives, while materially representing the proceeds of same would be utilized for the payment of legitimate and final costs of Product development when in fact monetary sums received by issuance of the debt instrument(s) were utilized in the main by insiders of E-Rex for personal compensation and/or their personal benefit.

41. Moreover, in furtherance of Defendants' scheme to distribute securities to the public without the protections of registration under Section 5 of the Securities Act of 1933, Defendants filed with the Securities and Exchange Commission twenty (20) Form S-8 registrations, registering 9,414,338 shares of common stock. Plaintiffs are informed and believe the Defendants, receiving said securities, in most cases, performed little or no services for E-Rex in exchange for the S-8 stock . Alternatively, in some cases, the S-8 stock was issued to Defendants in exchange for

consulting done for capital raising purposes, in direct contravention of the purposes of Form S-8, thus violating Section 5 of the Securities Act of 1933.

42.     That Defendant E-Rex, on or about November 1, 2000, filed its Form SB-2 stating that in or about March 2000, Defendant Mitchell was issued Two Million (2,000,000) shares of S-8 stock in a fraudulent scheme wherein Defendant Mitchell may or did convert the stock to cash and loaned the cash, through Defendant Mitchell's company, IIBI, back to Defendant E-Rex, in violation of Section 5, and in contravention of the provisions set forth in Form S-8.

43.     That in furtherance of Defendants' scheme to distribute securities to the public without the protections of registration under Section 5 of the Securities Act of 1933, the public filings for Defendant E-Rex, specifically the 10QSB dated November 14, 2001, page 13 thereof, set forth seven (7) Regulation S transactions, totaling Nine Hundred Eighteen Thousand One Hundred Ten (918,110) shares of common stock and Three Hundred Seventy One Thousand Seven Hundred Eighty Seven Dollars ($371,787.00) of value, which shares of Regulation S stock were issued to officers and directors of E-Rex, said shares Plaintiffs believe were not subject of required restrictive legend(s), all in violation of Section 5 of the Securities Act of 1933.

44.     At all times during the Class Period, the management of E-Rex and/or its officers and directors embarked on a calculated and willful course of conduct causing the corporation, to incur a loss of Eight Million Dollars for the year ending December 31, 2000. This loss is an increase of approximately 17 fold as compared to a loss of $464,000.00 the prior year. Plaintiffs are informed and believe said losses were occasioned in whole or in part by the issuance of stock to insiders in contravention of applicable securities and exchange rules and regulations as stated aforesaid or alternatively, arose from the misappropriation of assets by insiders or alternatively, from the mismanagement and/or malfeasance of the directors and officers of

Defendants.

45.     The excessive loss from operations, as stated aforesaid, is the direct and proximate result of the willful, wanton and reckless conduct of Defendants, and each of them, and resulted in a loss of value to the Plaintiff Class of its securities ten times greater than the prior year.

46.     In furtherance of its wrongful scheme to obtain monies from the Plaintiff Class and devalue the securities held by the Plaintiff Class, Defendants and its officers and directors knowingly and willfully refused to hold or convene any timely and/or proper annual meeting of shareholders in calendar year 2000 in contravention of its corporate charter and by-laws. Moreover, Defendants improperly refused to honor the demand of the Plaintiff Class for a Special Meeting of Shareholders in direct contravention of the laws of the State of Nevada and Defendant E-Rex's Nevada Corporate Charter, and By-Laws of record.

## *FIRST CLAIM FOR RELIEF*

### [Federal Securities Fraud--15 U.S.C. Sec. 78(j)]

47.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

48.     By engaging in conduct as aforesaid, Defendants knowingly and willfully made misrepresentations that were material to the purchase or sale of its securities to the Plaintiff Class herein, specifically:

(a)     There was founder stock available for purchase and/or alternatively, that the stock available for purchase would be free trading.

(b)     Defendants made omissions that were material to the purchase or sale of the securities which misrepresentations and omissions were materially misleading because the Plaintiff Class acquired the securities with the

13

understanding that it could sell its stock without restriction on and after March 29, 2000.

(c)    Moreover, Plaintiff Class was unaware that E-Rex's share prices would decrease significantly upon the improper issuance by E-Rex of additional shares as aforesaid, causing a dilution of the shares.

49.    That Defendants, and each of them, engaged in the foregoing conduct with the intent to deceive and/or defraud the Plaintiff Class herein.

50.    Defendants made the foregoing misrepresentations and omissions to the Plaintiff Class in connection with the purchase or sale of securities.

51.    Defendants made the foregoing misrepresentations and omissions to the Plaintiff Class by means of the mails or some other device or instrumentality of interstate commerce or by and through any facility of any national securities exchange.

52.    That Plaintiff Class relied upon Defendants misrepresentations and omissions in the sale and issuance of its securities as aforesaid.

53.    As a consequence of Plaintiffs' rightful reliance, Plaintiffs purchased the securities in question.

54.    Defendants' material misrepresentations and omissions actually, directly and proximately caused Plaintiff Class to suffer monetary damage.

55.    By engaging in the foregoing acts, the Defendants are liable for damages to be proven at time of trial.

## SECOND CLAIM FOR RELIEF

### (Violations of Section 5(a) and 5(c) of the Securities Act [15 U.S.C. Sec. 77e(a) and 77e(c)]

56.    Plaintiffs repeat and reallege Paragraphs 1 through 46 and Paragraphs 47 through 55 of the First Claim for Relief.

57.    As stated aforesaid, Defendants directly or indirectly, have made use of the means or

14

instruments of transportation or communication in interstate commerce, or of the mails or of the national securities exchange to:

(a)     Sell securities in the form of the common stock of E-Rex through the use of offering solicitations, mediums, memoranda, prospectus or otherwise, when no registration statement was in effect as to such securities;

(b)     Caused said materials to be carried through the mails or injected into interstate commerce, for the purpose of sale, or delivery after sale, securities in the form of the common stock of E-Rex, when no registration statement was in effect as to such securities; or

(c)     Offered to sell securities in the form of the common stock of E-Rex, when no registration statement was filed as to such securities.

58.     That by reason of Defendants' acts and activities as aforesaid, Defendants violated Section 5(a) and 5(c) of the Securities Act of 1933 [15 U.S.C. Sec. 77e(a) and 77e(c)].

59.     That by reason of Defendants' acts as aforesaid, Defendants have actually and proximately caused Plaintiff Class to suffer monetary damage to be proven at time of trial.

### *THIRD CLAIM FOR RELIEF*

**[Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. Sec.77q(a)(1)]
and Section 10(b) of the Exchange Act [15 U.S.C. Sec.78j(b)
and Rule 10b-5 thereunder (17 C.F.R.240.10B-5)]**

60.     Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief and Paragraphs 56 through 59 of the Second Claim for Relief.

61.     As stated aforesaid, Defendants directly or indirectly, in the offer or sale, or in connection with the purchase or sale of securities and by use of the means of instrumentalities of interstate commerce, including instruments of transportation or

15

communication in interstate commerce, including the mails, and/or facilities of national securities exchange(s):

(a)  have employed devices, schemes, or artifices to defraud;

(b)  have made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)  have engaged in acts, practices and courses of business which operated or would operate as a fraud or deceit upon persons, including Plaintiff Class herein.

62. Defendants knew and acted with scienter in its wrongful activities, herein alleged.

63. That the misrepresentations and/or omissions of Defendants herein, were material and knowing misrepresentations and/or omissions of fact as aforesaid.

64. By reason of Defendants' activities as aforesaid, Defendants violated Section 17(a)(1) of the Securities Act [15 U.S.C. Sec.77q(a)(1)] and Section 10(b) of the Exchange Act [15 U.S.C. Sec. 78j(b) and Rule 10b-5 promulgated thereunder [17 C.F.R. Sec.240.10b-5].

65. That by reason of Defendants' acts as aforesaid, Defendants have actually and proximately caused Plaintiff Class to suffer monetary damage to be proven at time of trial.

### *FOURTH CLAIM FOR RELIEF*

### (NRS 90.570(2) and NRS 90.660)

66. Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief , Paragraphs 56 through 59 of the Second Claim for Relief and Paragraphs 60 through 65 of the Third Claim for Relief.

67. By engaging in the foregoing conduct, the Defendants made misrepresentations that were material in the purchase or sale of securities as set forth above.

16

68. The acts and activities of Defendants, are in violation of NRS 90.570(2) and 90.660.

69. Alternatively, by engaging in the foregoing conduct, the Defendants made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made not misleading in light of the circumstances by which they were made.

70. Plaintiff Class relied upon the Defendants' misrepresentations and/or omissions.

71. As a consequence of Plaintiffs' rightful reliance, Plaintiffs purchased the securities in question.

72. That Defendants material misrepresentations or omissions actually and proximately caused Plaintiffs to suffer monetary damage.

73. By engaging in the foregoing acts, the Defendants are thereby liable to Plaintiffs for damages in an amount to be proven at time of trial.

### *FIFTH CLAIM FOR RELIEF*

### **[Violation of Sec. Reg. 10(b)(5)]**

74. Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief, Paragraphs 56 through 59 of the Second Claim for Relief, Paragraphs 60 through 65 of the Third Claim for Relief and Paragraphs 66 through 73 of the Fourth Claim for Relief.

75. Defendants offered and solicited for sale unrestricted, free-trading securities of E-Rex.

76. The securities sold to Plaintiff Class were restricted and not free-trading as represented by Defendant.

77. Despite Defendants' representations that founder stock was available to Plaintiff Class, and subsequent misrepresentations that founder stock was not available, Defendants did in or around March, August and November 2000, issue in excess of Two Million Two Hundred Thousand shares of unrestricted stock to insiders, all in

17

violation of the Securities Act of 1933.

78.   Moreover, as stated aforesaid, the stock so issued to insiders was inappropriate and arose from the knowing and willful misrepresentations to Plaintiff Class that the stock it was to receive was free trading but then was not free trading when in fact free trading stock was available to the Plaintiff Class but was reserved and utilized for the sole benefit of the insiders of Defendants, all to Plaintiffs harm herein.

79.   Defendants material misrepresentations or omissions actually and proximately caused Plaintiffs to suffer monetary damage.

80.   By engaging in the foregoing acts, the Defendants are thereby liable to Plaintiffs for damages in an amount to be proven at time of trial.

## *SIXTH CLAIM FOR RELIEF*

### [Violation of Sec. Reg. 10(b)(5)]

81.   Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief , Paragraphs 56 through 59 of the Second Claim for Relief, Paragraphs 60 through 65 of the Third Claim for Relief , Paragraphs 66 through 73 of the Fourth Claim for Relief and Paragraphs 74 through 80 of the Fifth Claim for Relief.

82.   That during the period March 2001 through November 2001, Defendants did without good cause issue in excess of nine (9) million shares purportedly in accord with Form S-8 to persons, parties or entities for purported services rendered to the corporation.

83.   Plaintiffs are informed and believe and thereon allege  the issuance of said stock was for services not in fact provided to the company and/or alternatively, for unnecessary services none of which services were in furtherance of the corporation's true business plan and goals as represented to Plaintiffs herein.

//

18

84.   That the issuance of said shares is a fraud upon the market, a fraud upon the Plaintiff Class, and was done to dilute and depress the price of the company's securities all to the detriment of Plaintiff's herein.

85.   The issuance of said shares and furtherance of the fraud were participated in and arose with the advice and/or concurrence of Defendant LeBrecht, and/or Defendant The LeBrecht Group, a Professional Corporation.

86.   That Defendants' acts, material misrepresentations and/or omissions actually and proximately caused Plaintiffs to suffer monetary damage.

87.   By engaging in the foregoing acts, the Defendants are thereby liable to Plaintiffs for damages in an amount to be proven at time of trial.


## *SEVENTH CLAIM FOR RELIEF*

### (Breach of Fiduciary Duty)

88.   Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief, Paragraphs 56 through 59 of the Second Claim for Relief, Paragraphs 60 through 65 of the Third Claim for Relief, Paragraphs 66 through 73 of the Fourth Claim for Relief, Paragraphs 74 through 80 of the Fifth Claim for Relief and Paragraphs 81 through 87 of the Sixth Claim for Relief.

89.   As stated aforesaid, the Defendant officers and Directors of E-Rex have knowingly, intentionally and wrongfully misappropriated assets of E-Rex for the personal use and/or financial benefit of said party Defendants.

90.   The officers and directors of E-Rex have breached fiduciary duties to its stockholders in one or more of the following particulars:

   (a)   Dissipation and misappropriation of approximately $329,000.00 cash from Plaintiff Class by issuance of stock to the Plaintiffs, the proceeds of which were utilized for the believed personal gain and/or benefit of its directors

19

and/or officers by acquiring with said cash unnecessary business entities of its officer and president, Carl Dilley, to wit: Divedepot.com.

(b)    By tendering to Mitchell as Director of E-Rex in excess of $179,000.00 for alleged "consulting services".

(c)    By failing to timely pay, when cash assets were available, the just debts of the corporation including debts due Valcom respecting the finalization and development of E-Rex's primary asset as referenced above.

(d)    By causing operating losses in excess of Eight Million Dollars for the year ending December 31, 2000 an increase 17 fold as compared to a dollar loss of $464,000.00 in the prior calendar year all due to the wrongful acts and activities as aforesaid.

91.    Moreover, Defendants have admitted as of December 31, 2000 that due to significant losses now 17 fold greater than as of December 31, 1999, there is substantial doubt as to Defendants' ability to continue in its business.

92.    By reason of the wrongful acts and activities of Defendants and their management as aforesaid, Defendants have breached its fiduciary duty to Plaintiffs herein, all to Plaintiff shareholders' damage and harm.

93.    Defendants' breach of fiduciary duty and malfeasance have actually, directly and proximately caused Plaintiffs to suffer monetary damage.

94.    By engaging in the foregoing acts, the Defendants are thereby liable to Plaintiffs for damages in an amount to be proven at time of trial.

## *EIGHTH CLAIM FOR RELIEF*

### **(Diversion of Corporate Assets/Funds/Accounting)**

95.    Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief, Paragraphs 56 through 59 of the Second Claim for Relief, Paragraphs 60 through 65 of the Third Claim for Relief, Paragraphs 66 through 73

20

of the Fourth Claim for Relief, Paragraphs 74 through 80 of the Fifth Claim for Relief, Paragraphs 81 through 87 of the Sixth Claim for Relief and Paragraphs 88 through 94 of the Seventh Claim for Relief.

96.    As stated aforesaid, Plaintiffs are informed and believe and thereon allege that Defendants, its management and officers and directors have diverted corporate assets to said officers and directors personal use and benefit, including but not limited to, utilization of corporate assets to acquire without good cause alleged business entities of its officers herein.

97.    Moreover, Defendants have failed and refused to hold annual shareholder meetings for calendar year 2000 and has rejected the rightful request of Plaintiffs for a special shareholders meeting in calendar year 2001 to ascertain the true use of corporate funds; the reason for the dissipation of corporate funds; the continued operating losses of E-Rex for calendar years 2000, 2001 and 2002 and the inability of the corporation to pay its debts or other obligations as they mature, including but not limited to Valcom and other bona fide creditors of the corporation.

98.    Plaintiffs have made demand upon Defendant E-Rex, its officers and directors for financial information respecting the assets, liabilities and true operations of Defendants which demands have been wrongfully refused.

99.    By reason of Defendants' refusal to account to Plaintiff Class as aforesaid, Plaintiffs are unable to ascertain the precise amount of damages suffered by it as a result of Defendants' improper actions for the reasons that said Defendants have concealed the full details of the wrongful acts and activities and have withheld from Plaintiffs Class a proper review of Defendants' books, financial instruments and business activities.

100.    Unless the court orders Defendants to immediately account for the assets, liabilities and revenues of the corporate Defendants, Plaintiffs will be unable to ascertain the true amount of its damages herein.

101.  Defendants' material misrepresentations or omissions actually and proximately caused Plaintiffs to suffer monetary damage and the Defendants are therefore liable to Plaintiffs for damages in an amount to be proven at time of trial.

## *NINTH CLAIM FOR RELIEF*

### (Removal of Directors and Officers)

102.  Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief, Paragraphs 56 through 59 of the Second Claim for Relief, Paragraphs 60 through 65 of the Third Claim for Relief, Paragraphs 66 through 73 of the Fourth Claim for Relief, Paragraphs 74 through 80 of the Fifth Claim for Relief, Paragraphs 81 through 87 of the Sixth Claim for Relief, Paragraphs 88 through 94 of the Seventh Claim for Relief and Paragraphs 95 through 101 of the Eighth Claim for Relief.

103.  Plaintiffs are informed and believe and alleges that the By-laws of E-Rex provide that the corporation shall have a Board of Directors.

104.  Plaintiffs are informed and believe and thereon alleges that Defendant Mitchell, together with such other members of the Board of E-Rex as above referenced, have engaged in the aforesaid wrongful conduct over a continuous period of time all to the detriment of E-Rex and its shareholders of record.

105.  Plaintiffs are informed and believe and thereon allege that such conduct will continue while the current board serves as Directors of E-Rex in the future.

106.  As stated aforesaid, Defendants through its officers and directors have refused the rightful request of Plaintiff Class for a special meeting of shareholders to ascertain the true activities of the corporation, the reason for the corporation's excessive financial losses, the reason for the corporations imprudent issuance of stock to insiders and to persons or parties who have not contributed services to the

22

corporation all of which demands has been wrongfully denied.

107.    For the reasons stated aforesaid, Plaintiffs pray this Court order a special shareholders meeting be held as mandated by the By-Laws of Defendants, or alternatively, that the current directors be removed as directors of Defendant and the current officers be removed as officers of Defendant and that the current directors be barred from re-election.

## *TENTH CLAIM FOR RELIEF*

### **(Receiver/Custodian)**

108.    Plaintiffs repeat and reallege Paragraphs 1 through 46, Paragraphs 47 through 55 of the First Claim for Relief, Paragraphs 56 through 59 of the Second Claim for Relief, Paragraphs 60 through 65 of the Third Claim for Relief, Paragraphs 66 through 73 of the Fourth Claim for Relief, Paragraphs 74 through 80 of the Fifth Claim for Relief, Paragraphs 81 through 87 of the Sixth Claim for Relief, Paragraphs 88 through 94 of the Seventh Claim for Relief, Paragraphs 95 through 101 of the Eighth Claim for Relief and Paragraphs 102 through 107 of the Ninth Claim for Relief.

109.    As stated aforesaid, Defendants, its officers and directors have breached their fiduciary duty to Plaintiffs; have diverted and/or misappropriated assets of Defendant, have caused the believed waste of corporate assets and have failed to account to Plaintiffs as to the revenue, expenses, assets, liabilities of the Defendant and have admitted the corporation may not be able to continue in its trade and business.

110.    Plaintiffs respectfully request this Court Order the appointment of a Custodian who is empowered pursuant to NRS 78.347 to account for and/or recover and/or operate the trade and business of Defendant E-Rex.

111.    Alternatively, Plaintiffs request this Court order the appointment of a Receiver pursuant to NRS 78.660 and/or NRS 32.010 to account for and recover the assets of

23

Defendants, to preserve the assets of Defendants, and receive and collect all rents, issues and profits arising from Defendants operation of assets and apply same to the preservation of Defendants' trade and business in payment of all charges thereon to include the receivers and/or custodians compensation, the payment of monetary sums due all other bona fide trade creditors during the pendency of this action.

WHEREFORE, Plaintiffs herein expressly reserving its right to amend this complaint at time of trial to include all items and amounts of damages not yet specifically ascertained, prays for relief against Defendants, as follows:

1.    For general and special damages as proven at time of trial.

2.    For the removal of the present directors of E-Rex, Inc., a Nevada Corporation.

3.    For an accounting from Defendants as to the disposition of corporate funds of E-Rex, Inc., a Nevada Corporation and the impression of a trust upon same.

4.    For an immediate accounting by Defendants of all assets, revenues and debts of the corporation and application of revenues of E-Rex, Inc., a Nevada Corporation.

5.    For the removal of Carl Dilley as an officer of E-Rex, Inc., a Nevada Corporation and the removal of Donald Mitchell and all Directors of the Nevada corporation.

6.    For the appointment of a Custodian and/or Receiver suitable to this Court to oversee and manage the business affairs of E-Rex, Inc., a Nevada Corporation and further to itemize, account for, preserve and recover all assets and monies of E-Rex, Inc., a Nevada Corporation.

7.    For the holding of a special meeting of the shareholders of the corporation in accordance with the by laws of the corporation and Nevada law.

8.    For reasonable attorneys fees and costs incurred herein.

//

//

//

24

1    9.    For such other and further relief as the Court may deem just and proper in the

2          premises.

3    Dated this _30th_ day of January, 2002.

4                                    STOECKLEIN LAW GROUP, A PROFESSIONAL
                                     CORPORATION
5

6

7                                    DONALD STOECKLEIN, Bar #075091
                                     402 West Broadway, Suite 400
8                                    San Diego, CA 92101
                                     (619) 595-4882

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   25